INTERNATIONAL PAPER COMPANY *v.*
FRED W. LANGLEY

5-5765                                        475 S.W. 2d 686

Opinion delivered January 24, 1972
[Rehearing denied February 28, 1972.]

*Gaughan, Laney, Barnes, Roberts & Harrell,* for appellant.

*Brown, Compton & Prewett,* for appellee.

FRANK HOLT, Justice. This is a workmen's compensation case in which the appellee claims compensation for total permanent disability as a result of two separate heart attacks. The circuit court affirmed the Commission's finding that the appellee had suffered a 65% permanent partial disability to his body as a whole as a result of both attacks. From that judgment comes this appeal.

We first consider appellant's assertion that the evidence is insubstantial to support the Commission's finding.

The appellee, 43 years of age, was a long-time employee of appellant as a manual laborer. He based his claim for compensation upon a heart attack occurring on December 17, 1965, and, after returning to work, another attack on June 5, 1967.

It appears undisputed that before December 1965 appellee had experienced some cardiac problems, although he continued to work regularly. Appellee testified that before the December attack, "something kept mashing my windpipe off and on and I couldn't hardly breathe during that, I guess four or five days. Well, I came back one afternoon, I was on evenings, and I was just fixing to go to work and I picked up one bag [an empty paper bag 7 feet long and 2 feet wide] off the table there and it hit me in the left arm and my chest crushing in, and of course, I went on home and told my foreman I was going to the doctor that I would be back in a little while." He also testified:

Q. Prior to that time. Prior to picking the bag up did you have any difficulty in your arm or chest?

A. Sure.

Q. What type of pain had you had during the three or four hours prior to that time?

A. It was just a sharp pain running down my arm and it just hurt real bad, a throbbing pain in there.

Appellee was hospitalized and treated by his doctor who described his condition as being "quite typical of a coronary attack, coronary artery disease, acute." The diagnosis was that appellee has a coronary disease (narrowing of the coronary arteries) with angina. With respect to the December 1965 incident, one of appellee's doctors testified: "Let me say this. I think his original

pain, there is no reason for suspecting . . . in the original attack, there would be no reason for suspecting a relationship between work and coronary artery disease in December 1965."

In the circumstances we are unable to say there was substantial evidence to support the Commission's finding that any heart attack suffered by the appellee on this occasion (December 1965) was an accidental injury arising out of and in the course of his employment.

After the December 1965 attack appellee was hospitalized for a period of time and did not return to work for six months, during which time he received non-occupational group insurance benefits. In June 1966 when he returned to work it appears he again sustained a heart attack after working approximately one day. He resumed his employment in December 1966 and worked intermittently until June 5, 1967, at which time he suffered another heart attack as he was pulling bags off a conveyor belt. He testified that:

> I was pulling the bags off the conveyor. They have those automatic bag pullers and the hands come down and, of course, I was taking them off and putting them on the skid and when the tables run out I had to get across the belt and put them on the table and its just a strain any way you go, especially for a man who is not supposed to do those things.

This last attack disabled him to such an extent that he has not been able to engage in any gainful employment since then. With respect to this incident, there was medical evidence by appellee's doctor that:

Q. And is it correct that any type of exertion or lifting or straining will aggravate and make worse a coronary condition?

A. Yes sir.

Q. And you had previously advised him not to do that, and this June 5th attack immediately

followed his exertion on the job, I believe, according to the history you received?

A. Yes sir.

Q. And based upon that would you say that the exertion on the job aggravated and brought on the heart attack for which you began treating him on June 5, 1967?

A. It was definitely aggravated by it, as far as precipitating I can't say.

Q. It was definitely aggravated by it?

A. Yes sir.

It may be that it could be shown that the June 1967 heart attack was a result of the aggravation of a pre-existing condition and was work connected. See *Olin Mathieson Chemical Co.* v. *White,* 239 Ark. 833, 394 S. W. 2d 632 (1965); *Kearby* v. *Yarbrough Bros.,* 248 Ark. 1096, 455 S. W. 2d 912 (1970); *U. S. Fidelity & Guaranty Co.* v. *Dorman,* 232 Ark. 749, 340 S. W. 2d 266 (1960). In the case at bar we observe that the Commission has not yet considered and made any finding based only upon the June 1967 incident.

Appellant next contends for reversal that the appellee "waived any claim for workmen's compensation by filing a claim for sick and accident benefits with Metropolitan Insurance Company in which he represented that his disability was not related to his employment." It is true that during the six-month intervals following the December 1965 and June 1967 heart attacks the appellee applied for and received benefits for non-occupational sickness and accident on a group insurance policy carried by appellant for its employees. This claim form was in three parts, one being signed by the appellee, another by the appellant, and another part by the appellee's physician. That portion signed by the appellee, with the assistance of the employer's representative, did not indicate whether or not it was a non-occupational

sickness or accident. Furthermore, this policy was provided by appellant as a fringe benefit for its employees pursuant to a negotiated work contract. Suffice it to say that our legislature has seen fit to prevent the applicability of such a defense to a compensation claim. Ark. Stat. Ann. § 81-1320 (Repl. 1960) provides:

> No agreement by an employee to waive his right to compensation shall be valid, and no contract, regulation, or device whatsoever shall operate to relieve the employer or carrier, in whole or in part, from any liability created by this act, except as specifically provided elsewhere in this act.

We agree with the appellee that appellant's asserted defenses of waiver and estoppel are not applicable and, therefore, do not prevent compensation to the appellee.

Nor can we agree with the appellant that the June 1967 claim is barred by either the failure to give notice or by the statute of limitations. Our statute, § 81-1317(c), requires that any objection to the failure to give notice must be raised at the first hearing before the referee. As to the two-year statute of limitation, § 81-1318(c) similarly provides:

> Failure to file a claim within the period prescribed in subsection (a) or (b) shall not be a bar to such right unless objection to such failure is made at the first hearing on such claim * * *.

As we view the record, appellant's defense as to notice and the statute of limitations was not asserted at the initial hearing as to either claim and it cannot be raised for the first time on appeal.

Inasmuch as we are of the view that the first injury was not compensable, it is necessary that we reverse the judgment and remand the cause with directions that the Commission determine the degree of appellee's compensable disability, if any, as a result of the June 1967 attack. See *Davis* v. *Stearns-Rogers Const. Co.*, 248 Ark. 344, 451 S. W. 2d 469 (1970) and § 81-1313(f)(2)(ii).

Reversed and remanded.

JONES, J., dissents.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case. It is clear to me, as I interpret the evidence in this case, that the appellee's heart attack on June 5, 1967, occurred *when* he was pulling bags off a conveyor belt rather than *because* he was pulling bags off a conveyor belt. As I view the record, there is no substantial evidence that the appellee's overall heart condition was any worse immediately after the attack on June 5 than it was immediately before, and certainly I find no evidence at all that the appellee's overall disability because of his heart condition was caused or aggravated by the work he was doing on June 5, 1967.

As I interpret the evidence in this case, the appellee was simply suffering from coronary artery disease consisting of a *narrowing of the coronary arteries* going back at least as far as 1965. There was no evidence that appellee suffered a myocardial infarction that could have been attributed to insufficient blood supply under stress of exercise, as was the situation in *U. S. F. G. Co.* v. *Dorman*, 232 Ark. 749, 340 S. W. 2d 266, and there was no evidence of a coronary thrombosis which could have been attributed to exertion on the job as was the situation in *Crossett Chemical Co.* v. *Sedberry*, 232 Ark. 608, 339 S. W. 2d 426.

As I view the evidence in this case, the appellee on June 5, 1967, simply experienced angina pectoris (pain in his chest) as he had previously experienced and in all probability will continue to experience, when he takes more exercise than he should, either in or outside of gainful employment. Such was the situation in *Arkansas Power & Light Co.* v. *Scroggins*, 230 Ark. 936, 328 S. W. 2d 97. In that case the Commission very properly denied compensation and we affirmed.

It appears to me that the appellee was correct when he first filed his claim for disability under his group

policy. I can find no substantial evidence that whatever liability he may now suffer was caused or aggravated by his employment.

I would reverse and dismiss.